UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR424-024 |
| | ) | |
| JACOREY RIVERS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Jacorey Rivers is charged with one count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1), one count of Possession of a Machinegun in violation of 18 U.S.C. § 922(o), and one count of Possession of a Controlled Substance with Intent to Distribute (Fentanyl) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi).  Doc. 1 (Indictment).  He filed a Motion for Severance of Charges, doc. 23, which the Government opposes, doc. 26.  He also filed a Motion to Suppress recorded phone calls and text messages from Chatham County Detention Center, doc. 24, and a Motion to Suppress evidence found pursuant to a search of a red Acura, doc. 25.  The Government opposes both suppression motions. *See* docs. 27 & 28.  The Court held an evidentiary hearing on July 19, 2024.  Doc. 36 (Minute Entry).  The three Motions are ripe for disposition.

1

**Defendant's Motion for Severance of Charges**

The Grand Jury charged Rivers with Possession of a Firearm by a Prohibited Person and Possession of a Machinegun for conduct occurring "[o]n or about December 31, 2021," and charged him with Possession of Fentanyl with Intent to Distribute for conduct occurring "[o]n or about March 31, 2023." Doc. 1 at 1-3. Rivers seeks to sever the charge relating to his possession of Fentanyl from the weapons charges. *See* doc. 23. His written submission argues the Fentanyl charge will prejudice the other two charges, because the drug is "a highly publicized abused substance in the contemporary media." *Id.* at 2. In support of his argument, he cites to a Georgia statute, the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the Georgia Constitution, the "American Bar Association's Standards," and Georgia case law. *Id.* at 2-4. As the Government points out in its response, whether the joinder of these three offenses is proper is governed by Federal Rules of Criminal Procedure 8(a) and 14. *See generally* doc. 26.

The Eleventh Circuit undertakes a two-step analysis to determine whether separate charges are properly tried together. *See United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993). First, the Government must

demonstrate that the initial joinder of offenses was proper under Rule 8(a). *Id.* Rule 8(a) is construed broadly in favor of initial joinder. *United States v. Smalley*, 754 F.2d 944, 946 (11th Cir. 1985). If the Government meets that burden, the district court has discretion to consider whether the Defendant's request for severance should be granted. *Walser*, 3 F.3d at 385.

Under Rule 8(a), joinder of offenses is proper if: (1) the offenses are of the same or similar character, or (2) are based on the same act or transaction, or (3) are connected with or constitute parts of a common scheme or plan. Fed. R. Crim. P. 8(a). Under the first prong of the Rule, as long as offenses are of the same or a similar character, they may be joined even if they do not arise at the same time or out of the same transaction or series of acts. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). Even if the indictment does not demonstrate that joinder is appropriate, the Government may proffer evidence which will show the connection between the charges. *United States v. Dominguez*, 226 F.3d 1235, 1241 (11th Cir. 2000); *see also Hersh*, 297 F.3d at 1241 n.10 ("The similarity [among the charges] can be apparent from the face of the indictment or by the government's representations before trial, if

such representations are borne out in the evidence presented during trial."); *United States v. Waddell*, 2016 WL 3030178, at *1-*2 (S.D. Ga. May 25, 2016) ("To determine if joinder is proper, courts look to the allegations on the face of the indictment and, if the indictment lacks an explicit connection between the charges, to reasons offered by the Government.").

The Government first argues the three charged offenses are of a sufficiently similar character that joinder is appropriate under the first prong of Rule 8(a). *See* doc. 26 at 3, 7-9. To support its argument, it provides the details underlying the charged conduct. *Id.* at 5-7. According to the Government's proffer, on December 31, 2021, the Defendant ran a red light, fled from the Georgia State Patrol officer who attempted to pull him over, traveled at speeds exceeding 100 miles per hour, ran a stop sign, and was hit by the car with the right-of-way. *Id.* at 5. After Rivers emerged from the crashed vehicle and was arrested, officers found a loaded Glock handgun with an extended magazine in the wreckage. *Id.* Between Rivers' person and the vehicle, officers located $21,305 in cash. *Id.* Because Rivers had been out on supervised release

related to a prior conviction, he was sent back to federal prison in March of 2022 and released "around December of 2022." *Id.* at 6.

On March 31, 2023, during a city-wide crime suppression operation, a Savannah Police Officer pulled over a car which then "sped away from the stop." Doc. 26 at 6. During the chase that ensued, an officer monitoring from a helicopter saw the car "stop suddenly in front of a particular residence, pause there momentarily, and then accelerate away." *Id.* Another officer on the ground approached that residence and saw a different car, a red Acura driven by the Defendant, stopped in the same spot. *Id.* The red Acura "immediately pulled away." *Id.* The helicopter-based officer tracked the red Acura and relayed its movements—including several traffic violations—to officers on the ground. *Id.* at 7. Before the ground units could catch up, the Defendant "stopped the red Acura, got out, locked it, ran away through some backyards, tossed a baggie of fentanyl pills and the key to the red Acura, and hid under a shed." *Id.* Officers located and arrested the Defendant and retraced his path to find the baggie of pills and the key to the red Acura. *Id.* After obtaining a warrant to search the Acura officers found

additional fentanyl pills, marijuana, and $11,831 in cash in the center console. *Id.*

The Government contends the 2021 gun charges and the 2023 Fentanyl charge, while concerning violations of different statutes, are "nevertheless of a similar character." Doc. 26 at 7. It points out the conduct underlying all charges involves vehicular flight, the possession of contraband, and large amounts of cash. *Id.* at 7. It also points to the Eleventh Circuit's recognition that "drugs and guns go together like peas and carrots." *Id.* at 8 (quoting *United States v. Lopez*, 649 F.3d 1222, 1242 (11th Cir. 2011)). The Government candidly acknowledges it can point to no case finding gun charges and drug charges similar such that joinder is appropriate under Rule 8(a)'s first prong. *Id.* at 8. It also points to cases from other circuits finding that "gun charges and drug charges are not similar under prong one of Rule 8(a)." *Id.* at 9. However, it distinguishes those cases since they come from circuits which look only to the indictment to consider the propriety of joinder, and do not permit the Government to proffer facts to support joinder like the Eleventh Circuit's approach. *Id.*

6

While Rivers' written submission did not address the appropriate framework for considering challenges to joinder in this Court, *see generally* doc. 23, at the hearing his counsel did articulate an argument using Rule 8(a)'s framework. Doc. 36 at 1 (Minute Entry). He pointed to the time that elapsed between the charged conduct, and argued that the gun charges stem from an arrest where no drugs were found, and that the drug charge stems from an arrest where no gun was found to cut against the Government's argument for similarity. He also challenged vehicular flight as too common of a scenario in the criminal context to speak to the similarity of the incidents underlying the charges. There is no apparent witness overlap, and no indication of an ongoing investigation to tie the two incidents together. Therefore, he argued, joinder of the charges is improper.

Given the broad construction of Rule 8(a) mandated by the Eleventh Circuit, *see Hersh*, 297 F.3d at 1241, the Court should find that the Government has met its burden and has demonstrated that the three charges here are of a similar character such that joinder is appropriate. "Similar," in this context, means "nearly corresponding; resembling in many respects; somewhat alike; having a general likeness." *Id.* (internal

citation, quotations, and alterations omitted). The incidents described by the Government are, at bottom, "somewhat alike," and share "a general likeness." As argued by the Government, they both revolve around the Defendant fleeing from officers in a vehicle while carrying contraband. Although some time elapsed between the two, the offenses need not "arise at the same time" to be similar. *Id.* The charged conduct is, therefore, sufficiently similar to justify joinder.[1]

Even though joinder is appropriate under Rule 8(a), the Court must still consider whether severance is required under Rule 14. Rule 14(a) provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant . . . , the court may order separate trials of counts ... or provide any other relief that justice requires." *Id.* "The decision whether to grant a severance lies within the district court's sound and substantial discretion." *United States v. Annamalai,* 939 F.3d 1216, 1223 (11th Cir. 2019) (internal citation and quotations omitted). Severance is only required where joinder will cause "compelling prejudice" against which the district court can afford no protection. *Id.* "Compelling prejudice

---

[1] Because the charges arise from conduct that is sufficiently similar, the Court need not consider whether the conduct arises from a common scheme or plan, an argument the Government conceded at the hearing was the weaker of its two.

occurs when, 'under all the circumstances of a particular case,' it is apparent that the average juror could not follow the 'court's limiting instruction and appraise the independent evidence against a defendant solely on that defendant's own acts, statements, and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict.'" *Id.* at 1223-24 (quoting *Walser*, 3 F.3d at 386-87). "Absent evidence to the contrary, [courts] presume that ... jur[ies are] able to follow the court's instructions and evaluate the evidence against each defendant independently." *Walser*, 3 F.3d at 387. Against this backdrop, the Court should find that the Defendant has not identified compelling prejudice sufficient to warrant severance of the properly joined charges. His motion should, therefore, be **DENIED**. Doc. 23.

### Defendant's Motion to Suppress and Exclude all of Defendant's Chatham County Sheriff's Department and Chatham County Detention Center Recorded Jail Phone Calls

Defendant moves to suppress recordings of his telephone calls and, as clarified during the hearing, text messages he sent and received from the Chatham County Detention Center ("CCDC"). Doc. 24. He contends the CCDC's production of those recorded calls and text messages to the Government for use in its prosecution violates Due Process and the

Fourth Amendment. *Id.* at 3. In response, the Government argues this issue must be considered under the lens of the Fourth Amendment. Doc. 27 at 1 n.1. As the Government correctly notes, "[d]ressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment [Due Process] claim." *Smith v. Travelpiece*, 31 F.4th 878, 885 (4th Cir. 2022) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 364-67 (2017) (holding that a Fourth Amendment detention claim cannot be "convert[ed]" into a due process claim)). Therefore, the Court considers Defendant's suppression argument under the framework of the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const, amend IV. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967 (Harlan, J., concurring)). The Supreme Court has held that "[w]hen an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as

reasonable . . ., official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause," under the Fourth Amendment. *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (internal citations and quotations omitted). Therefore, to establish a Fourth Amendment violation, the Defendant must first demonstrate a legitimate expectation of privacy in the area searched. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). To meet that burden, the Defendant must show a subjective expectation of privacy that society is prepared to recognize as objectively reasonable. *Id.*

During the evidentiary hearing, the Government presented testimony from ATF agent Catherine Balzer. Doc. 36; *see also* doc. 36-1. Agent Balzer testified that she submitted a request form to CCDC for Rivers' recorded phone calls and text messages, and personally picked up a flashdrive containing the requested materials. She testified that, in her experience, recorded calls from the CCDC contain an explicit warning at the beginning of the call that the call will be recorded and subject to monitoring. The Government introduced one such recording, which warns: "This call will be recorded and subject to monitoring at any time."

Doc. 36-1 at 1 (Government's Exhibit 15). In the recording, directly after the warning, the Defendant enters his PIN number when prompted and identifies himself as "Jacorey Rivers" when prompted, indicating his ability to hear the recording. *Id.*

The Government also called Jessica Williams Weston from the Chatham County Sheriff's Office. *See* doc. 36. Ms. Weston testified she works with technology and software at the jail. She explained how the inmates, or "residents," are provided access to tablets that permit them to correspond via messaging to family and friends. She identified several times Rivers accepted or acknowledged that his communications would be subject to monitoring. *See, e.g.,* doc. 36-4 at 5, 7. In particular, she testified that in order to use the tablet to send text messages, Rivers would have had to acknowledge a warning that his electronic messages are "NOT PRIVATE." Doc. 36-4 at 7. The message warns: "All incoming and outgoing messages (except legal correspondence) are subject to review, censorship, or rejection by the correctional facility." *Id.*

As the United States District Court for the Southern District of Florida explained in *United States v. Robinson,* "[a] prison's practice of recording inmate telephone calls does not violate the Fourth

12

Amendment." 2008 WL 5381824, at *14 (S.D. Fla. Dec. 19, 2008). It recognized that "[n]umerous courts presented with this precise issue have held as a matter of law that there is no reasonable expectation of privacy in outgoing telephone calls from a prison, even if there is no actual notice that the calls will be intercepted." *Id.* (citing *United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996); *United States v. Amen*, 831 F.2d 373, 379-80 (2nd Cir.1987); *United States v. Sababu*, 891 F.2d 1308, 1329-30 (7th Cir. 1989); *United States v. Paul*, 614 F.2d 115, 116 (6th Cir. 1980); *United States v. Gangi*, 57 F. App'x 809, 815 (10th Cir. 2003)). For example, in *United States v. Noriega*, 764 F. Supp. 1480, 1492 (S.D. Fla. 1991), the court found "no doubt that [the defendant] had no reasonable expectation of confidentiality in his third-party conversations, as the various notices and the consent form all explicitly stated that these calls were subject to monitoring and recording," such that the Fourth Amendment was "simply inapplicable." Similarly, in *United States v. Valencia*, 711 F. Supp. 608, 610 (S.D. Fla. 1989), the court found that a jail's telephone monitoring practice did not violate the Fourth Amendment.

The same rationale applies to Rivers and his communications while incarcerated at the CCDC. He cannot claim an objectively reasonable expectation of privacy in calls where he is explicitly warned that the calls are recorded and subject to monitoring. Similarly, he can claim no objectively reasonable expectation of privacy in electronic communications that he was expressly warned are "NOT PRIVATE." "The Fourth Amendment is simply inapplicable to these conversations." *Noriega* at 1492. Defendant's Motion to Suppress should be **DENIED**. Doc. 24.

**<u>Defendant's Motion to Suppress Evidence from Vehicle Search</u>**

Defendant seeks to suppress "evidence illegally obtained from the red Acura which the Defendant was traveling in on March 31, 2023." Doc. 25 at 1. Although he concedes it was searched pursuant to a warrant, *id.* at 3, he argues the warrant was not properly executed pursuant to Federal Rule of Criminal Procedure 41, *id.* at 3-4. The Government responds that the Rule 41 only governs federal warrants, and not state warrants like the one at issue in this case. *See* doc. 28 at 1. It also argues that, even if Rule 41 did apply, and even if the technical

requirements of the Rule were not met, exclusion is not the appropriate remedy.[2] *Id.*

During the hearing, the Government presented testimony from Savannah Police Department Officer Melvinne Owino to explain the circumstances surrounding the search of the red Acura. Doc. 36 at 1; *see also* doc. 36-1 at 1. On March 31, 2023, after an officer in a helicopter observed a red Acura commit several traffic violations, *see* doc. 36-2 at 3, uniformed officers in a marked police vehicle attempted to pull it over, *see id.* at 6. The red Acura continued to drive at an excessive speed until stopping in front of a house in a neighborhood. *Id.* The driver, later revealed to be Rivers, exited the vehicle and fled on foot. *Id.* After officers located and arrested Rivers, one officer retraced his steps and located a baggie of pills and the key to the red Acura. Doc. 36-2 at 1.

Twelve days after Rivers' arrest, on April 12, 2023, Detective Owino submitted a search warrant application and affidavit to Judge Claire Williams of the Recorders Court of Chatham County. Doc. 36-2 at 13-16. Judge Williams issued a search warrant for the red Acura that same day.

---

[2] The Government also argues a warrant was not necessary to conduct the search, but the Court need not reach that alternative argument for reasons more readily apparent below.

*Id.* at 17-18. Owino executed the search warrant on April 14, 2023. *Id.* at 23-24. The search revealed marijuana, fentanyl pills, and a large amount of cash in the center console. *Id.* at 26. Owino submitted the return of service to Judge Williams, who signed it on April 18, 2023. *Id.* at 25. There is no indication, from either Owino's testimony or the copy of the Return of Service, that the document was filed in the Recorder's Court Clerk's Office. *Id.*

Although Defendant's original motion cited to Federal Rule of Criminal Procedure 41, during the hearing he appeared to concede, appropriately, that Rule 41 does not apply to this state issued warrant. *See, e.g.*, *United States v. Brown*, 569 F. App'x 759, 762 (11th Cir. 2014) (quoting *United States v. Lehder–Rivas*, 955 F.2d 1510, 1522 (11th Cir. 1992) ("Rule 41 governs searches that are 'federal in execution.'")). Instead, Defendant argued that the apparent failure of the officer to return the executed warrant to the Clerk of Court violated an unspecified Georgia statute. Even if Defendant is right that Georgia law requires an officer to return the executed search warrant to the Clerk, and returning

it to the issuing Judge was unsatisfactory under such a law,[3] Defendant has not articulated any reason for why the exclusionary rule should apply in this case.

In *United States v. Leon*, 468 U.S. 897, 918 (1984), the Supreme Court expressly rejected the notion that a technical warrant defect automatically called for suppression of evidence obtained pursuant to the technically deficient warrant. Instead, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* The Eleventh Circuit has recently clarified that "the exclusionary rule applies only if 'the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *United States v. McCall*, 84 F.4th 1317, 1323 (11th Cir. 2023) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)). It applies "in only unusual cases" and, "[i]n doubtful or marginal cases, suppression is inappropriate." *Id.* (internal quotations and citations omitted).

---

[3] It is not clear what Georgia statute Defendant relied upon at the hearing. The Georgia code appears to require a written return be made "without unnecessary delay before the judicial officer named in the warrant . . . ." O.C.G.A. § 17-5-29. That is, of course, what happened here. Additionally, Georgia law provides that "[n]o search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused." O.C.G.A. § 17-5-31.

There is nothing to indicate any deliberate, reckless, or grossly negligent disregard for Rivers' Fourth Amendment rights by the Savannah Police Detective who sought and obtained a warrant, executed it, and returned the executed warrant to the issuing judge. Rivers' Motion to Suppress should, therefore, be **DENIED**. Doc. 25.

## Conclusion

Defendant's Motion for Severance of Charges should be **DENIED**. Doc. 23. Defendant's Motion to Suppress and Exclude all of Defendant's Chatham County Sheriff's Department and Chatham County Detention Center Recorded Jail Phone Calls should be **DENIED**. Doc. 24. Defendant's Motion to Suppress the search of the red Acura should be **DENIED**. Doc. 25.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections

should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 1st day of August, 2024.

_____
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia